**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CONNIE YUAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-01355-DII |
| v. | |
| HOMETRUST MORTGAGE CO., | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## I.   INTRODUCTION

Plaintiff Connie Yuan, on behalf of herself and all others similarly situated, hereby respectfully requests that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.

In December 2022, Plaintiff filed suit against Defendant Hometrust Mortgage Company, ("Defendant" or "Hometrust") related to a July 2022 data breach involving Hometrust's systems that affected the personal identifying information ("PII") of Plaintiff and approximately 17,300 other individuals. After several weeks of arm's-length negotiations and an April 11, 2023, mediation session with Mr. John DeGroote, an experienced mediator with DeGroote Partners, where the key terms were finalized, the Plaintiff and Defendant Hometrust reached the Settlement Agreement (the "Settlement" or "S.A.") attached hereto as **Exhibit 1**. The Settlement provides timely and excellent benefits to the Settlement Class. Under the Settlement, Hometrust will fund

1

a $700,000 non-reversionary common fund from which Settlement Class Members are eligible to recover a cash settlement payment of $50 or up to $40 per hour for up to ten hours of lost time for time spent responding to the data breach, and one year of credit monitoring protection. In addition, Hometrust will provide additional anti-phishing training to its employees at its own expense and separate from the other settlement benefits for the Settlement Class. As detailed herein, the Settlement surely satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Kroll as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Connie Yuan as Representative of the Class; (6) appointing Meyer Wilson Co., LPA, Kendall Law Group., and Turke & Strauss LLP, as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (S.A. Ex. A), Long Form Notice (S.A. Ex. B) and Claim Form (S.A. Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiff's service award.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide the Settlement Class Members with substantial monetary relief without the risk of delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

## II.    STATEMENT OF FACTS

### A.  Hometrust's Business

Hometrust is a non-depository mortgage bank, providing its residential mortgage loan services to customers within Texas as well as nationwide. Compl. ¶¶3, 23. As a result, it collects and stores its customers' PII in its systems including but not limited to names, addresses, dates of birth, Social Security, and other information.

### B.  The Data Incident

On July 15, 2022, Hometrust became aware that there was suspicious within its computer system. Doc. 1 ("Compl.") ¶4. Following months of investigating this suspicious activity, on September 27, 2022, Hometrust determined that it had been a victim of a Ransomware attack, and there had also been unauthorized access to the network. *Id*. ¶¶4-6 As a result of phishing emails or emails containing viruses or other malignant computer code, cybercriminals breached its systems and stole the PII of Hometrust's customers, including their first and last names, Social Security numbers, and addresses. *Id*. ¶28. Plaintiff, a former customer of Hometrust, is a victim of this Data Security Incident. *Id*. ¶¶70,72. Hometrust denies these allegations and denies that Plaintiff and the Settlement Class are entitled to any relief. S.A. § II.

### C.  Procedural History

Following Hometrust's notification to those affected by the Data Security Incident and an investigation by Settlement Class Counsel, Plaintiff filed this class action lawsuit against Hometrust in this Court on December 22, 2022. *See* Compl. Plaintiff alleged that, as a result of the

Data Incident, Hometrust was liable for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, intrusion upon seclusion/invasion of privacy, and unjust enrichment. *Id.*

Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties agreed to mediate on April 11, 2023, with Mr. John DeGroote from DeGroote Partners. Joint Decl. ¶5. Prior to the mediation, the parties negotiated many preliminary terms. *Id.* ¶7. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.* It wasn't until receiving the assistance of Mr. DeGroote that the parties were able to reach final agreement. *Id.* ¶8. A term sheet was agreed upon, and in the weeks that followed, the parties diligently negotiated and circulated drafts of the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id.* ¶8. The Settlement Agreement was finalized and executed on May 23, 2022. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiff and Settlement Class Members.

### D.  The Settlement Terms

#### 1.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "All persons whose personal information was exposed or potentially exposed to unauthorized access or acquisition as a result of an Incident affecting Hometrust's computer network that occurred in or around July of 2022." S.A. ¶ 4.1.

The Personal Information involved in the Hometrust Data Security Incident includes names, addresses, dates of birth, and Social Security numbers. Compl. at ¶28. All members of the

Settlement Class that do not opt-out of the settlement shall be referred to as Settlement Class Members.

### 2.  Settlement Benefits

The Settlement establishes a $700,000 non-reversionary common fund (the "Settlement Fund") from which Hometrust will provide Settlement Class Members with timely benefits targeted at remediating the specific harms they claim to have suffered as a result of the Incident. The benefits of the Settlement are available to all Settlement Class Members. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

### a.  Cash Benefits

Settlement Class members may make claims, with no dollar cap, to recover for economic losses, defined as any out-of-pocket cost fairly traceable to the Data Security Incident. S.A. ¶1.9. This includes losses suffered as a result of identity theft. *Id.* ¶ 4.5.2. The Settlement also allows Settlement Class Members who have spent at least one full hour dealing with the Data Security Incident to claim up to ten hours of lost time at $40 per hour by submitting a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. S.A. ¶ 4.5.8. Claims for Attested Lost Time are capped at $400 per individual. *Id.* In the alternative to claims for economic losses or attested time, Settlement Class Members are eligible to receive a cash settlement payment of $50 as a result of the Data Security Incident through submission of a valid and timely claim and supporting documentation indicating they are members of the class. S.A. ¶ 4.5.10.

### b.  Credit Monitoring Protections

In addition to the financial and temporal loss reimbursements and benefits, Plaintiff negotiated for significant additional credit monitoring and identity restoration services for the Settlement Class. All Settlement Class Members will have the option to sign-up for one year of credit monitoring provided by Equifax, at no cost if they elect to enroll. S.A. at 9. These services will come with fully managed identity theft protection, and identity restoration services. *Id*. at 10.

### c.  Equitable Relief

Separate from, and in addition to, the other Settlement Benefits described above, Hometrust will provide additional anti-phishing training to its employees. S.A. ¶ 4.5.19. The cost of the anti-phishing training will be paid by Hometrust separate and apart from the Settlement Fund.

### d.  Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement Class. Joint Decl. ¶8. Hometrust will pay the costs of notice to the Settlement Class, costs of Claims Administration, and the costs of dispute resolution from the Settlement Fund. S.A. ¶¶ 6.3. Hometrust will also pay for Plaintiff's attorneys' fees and costs (up to one-third of the total Settlement Fund), notice and settlement administration expenses, and a service award to Plaintiff (up to $5,000) from the Settlement Fund, subject to approval by the Court. *Id.* ¶¶ 6.3, 10.1. Settlement Class Counsel will separately petition the Court for such fees, costs and expenses no later than 14 days prior to the objection deadline. Settlement. *Id*. ¶ 10.2.

### 3.  Notice to Class Members

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator, Kroll, will collect Settlement Class Member information and distribute notice through two means. To start, the Claims Administrator will create a website where it will post all documents relating

6

to this case and the Settlement, including all claim forms needed to submit a claim. S.A. ¶¶ 7.1, 7.2.5. Then, because Hometrust has mailing addresses for Settlement Class Members, the Settlement Administrator will engage in a direct mail campaign. *Id.* ¶¶ 7.2.1. If that Settlement Class Member's mailing address is unknown, the Settlement Administrator will notice at the last known personal email addresses. *Id.* ¶7.2.1. Under the Settlement Agreement, the Settlement Administrator will start this process within 21 days after the Court preliminarily approves the settlement. *Id.* ¶¶1.19., 8.1.

### 4. Claims, Objections, Opt-Outs, and Termination

Settlement Class Members will have 60 days from the day the Settlement Administrator notifies the Settlement Class to submit claims. S.A. ¶1.6. This lengthy claims period ensures that Settlement Class Members have ample opportunity to take part in the benefits offered by the Settlement. The Claims Administrator will adjudicate all claims, including by reviewing any documents a claimant attaches to support their claim. *Id.* ¶¶ 4.5.1, 4.5.4, 4.5.9. Settlement Class Members will have 14 days to address any defects identified by the Claims Administrator, who will determine whether the Settlement Class Member has cured them. *Id.* ¶¶ 4.5.4, 4.5.14. If the Claim Administrator rejects a claim determination related to Economic Losses, the Settlement Class Member will have the opportunity to request an appeal in writing and shall be referred to the claims referee, who will serve as such. *Id.* ¶¶4.5.7.

Settlement Class Members may opt-out from receiving the Settlement's benefits by sending written and signed notice to the Claims Administrator clearly manifesting their intent to be excluded from the Settlement Class. *Id.* ¶ 8.9.1. Settlement Class Members opting out must notify the Claims Administrator within 45 days from the day the notice program commences. *Id.* ¶ 1.22.

Settlement Class Members may also object to the Settlement within 45 days from the day the notice program commences. A timely written notice of their objection must be filed with the Clerk of Court and served concurrently upon Settlement Class Counsel and Hometrust's Counsel. *Id*. ¶¶1.2.1., 8.10.1.To object, an objector must state their contact information, name of the action, establish themselves as a Settlement Class Member, state all grounds for their objection with any legal support and evidence Class Member wishes to introduce, identify all counsel representing them, explain whether they will appear at the Final Fairness Hearing and a list of people who they intend to call to testify at the Final Fairness Hearing if applicable,  identify all other objections to any proposed class action settlement they have made in the last three years, identify all cases in which Settlement Class Member has been named as either a Class Member or lead Plaintiff, and sign the objection. S.A. ¶¶ 8.10.1.

### 5. Release

To receive the Settlement's Benefits, Plaintiff and Settlement Class Members agree to release Hometrust for all claims and causes of action asserted or that could have been asserted by any Settlement Class Member based on, relating to, concerning or arising out of the Data Incident. S.A. ¶¶ 4.5.16, 9.1-9.3.

## III.   ARGUMENT

### A.  Class Action Settlement Approval Process

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992).

Plaintiff asks the Court to take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. Because no class has been certified, "the judge should [also] make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." William B. Rubenstein, *Newberg on Class Actions* § 13:18 (5th ed. June 2019 update (citation omitted). Judicial and public policy favors the resolution of disputes through settlement. *See ODonnell v. Harris Cty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Settlement agreements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiff's motion and allow notice to be provided to the class.

### B.  The Settlement Satisfies the Criteria for Preliminary Approval

At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2009 WL 10670041, at *6 (W.D. Tex. Jan. 8, 2009);*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standards at the preliminary approval stage are not as stringent as those applied to a motion for

final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. at 314-315.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate" in light of the considerations articulated in the rule.    The Fifth Circuit developed its own factors— known as the Reed factors—for determining whether a settlement was fair, adequate, and reasonable, including: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiff prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See Stott v. Cap. Fin. Servs. Inc.,* 277 F.R.D. 316, 343 (N.D. Tex. 2011) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because Rule 23 and the *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements. *See ODonnell*, 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state:

"The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. See *Hays*, 2019 WL 427331, at \*9; *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." *O'Donnell*, 2019 WL 4224040, at \*7 (quoting 2 McLaughlin on Class Actions, § 6:7 (15th ed. 2018)).

Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

### 1. The Settlement is the product of serious, informed, and arm's-length negotiations.

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the result of negotiations among experienced counsel and with considerable assistance from a well-respected and experienced mediator, John DeGroote. Joint Decl. ¶8. In the weeks leading up to the mediation, the parties exchanged key information needed to inform their strategies. *Id.* ¶¶6-7. This

11

allowed the parties to simultaneously agree on several terms of the Settlement prior to mediating with Mr. DeGroote. *Id*. Mr. DeGroote then assisted the parties in coming to resolution on all substantive terms of the Settlement. *Id.* ¶8. Throughout all negotiations, Settlement Class Counsel and counsel for Hometrust fought hard for the interests of their respective clients. *Id*. Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. *Id.* at Exs. A-C. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because they strongly indicate a lack of collusion in the final result.

## 2. The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members.

The benefits made available to Class Members as a result of this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated with a settlement payment in cash or their loss in time resulting from fraud. This recovery ensures that every Settlement Class Member that submits a valid claim will receive adequate compensation for the harms that they have suffered as a result of the Data Incident. Moreover, to prevent any additional harm from occurring and to protect from fraud, Settlement Class Members are entitled to one additional year of credit monitoring. *See* S.A. ¶ 4.5.1; S.A. Ex. A; S.A. Ex. B at 4. Finally, Hometrust has agreed to provide additional anti-phishing training to its employees. S.A. ¶ *Id*. ¶ 4.5.19. These benefits are immediate and significant, and Settlement Class Counsel acknowledges that it is possible that the Class could receive nothing if the case is litigated to trial. Joint Decl. ¶¶10-12.

For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain.

*See, e.g. In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same). Plaintiff also recognizes the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Settlement Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020).  As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party.  This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation.

Further, the Settlement treats all Settlement Class members fairly and equally. Each Settlement Class member is entitled to file a claim to obtain settlement benefits. The total amount of the Settlement—which was the product of vigorous negotiations—is fair, reasonable and adequate in light of the risks the Plaintiff and Settlement Class faced and the potential damages available.

### C.  Preliminary Certification of the Settlement Class is Appropriate

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant*, No. 3:20-CV-3042, 2020 WL 5258454, at *11 (E.D. La. Sept. 2, 2020) (citing Fed. R. Civ.

P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different (and, at times, more lenient) analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.*

Courts routinely certify similar nationwide classes in data breach cases. *See, e.g., In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), reversed on other grounds, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). This case should similarly be certified.

### 1.  The Settlement Class satisfies the requirements of Rule 23(a).

#### a.  Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v.*

*Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class involves approximately 17,300 individuals, easily surpassing the threshold required to establish numerosity and judicial economy would be well-served by certification.

### b. Commonality

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Plaintiff here easily meets the commonality requirement because she can demonstrate numerous common issues exists. For example, whether Hometrust failed to adequately safeguard the records of Plaintiff and Settlement Class members is a question common across the entire class. The adequacy of Hometrust's data security safeguards is common across the Settlement Class, and the safeguards applied to the data of one Settlement Class Member do not differ from those applied to another. Other common issues include but are not limited to:

- Whether Hometrust failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Hometrust's data security systems prior to and during the Data Security Incident complied with applicable data security laws and regulations; and

- Whether Hometrust's conduct was negligent.

These common questions, and others alleged by Plaintiff in her Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class wide basis. Plaintiff thus has met the commonality requirement of Rule 23.

### c.  Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the ransomware attack on Hometrust's computer system— and the cybersecurity protocols that Hometrust had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data. Plaintiff's claims are typical of the Settlement Class Members' and typicality is satisfied.

### d.  Adequacy

To be adequate, Plaintiff must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

In this litigation, Plaintiff Yuan's interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. Plaintiff's and

Settlement Class Members' PII was all allegedly compromised by Hometrust in the same manner. Moreover, the Settlement Agreement provides that Plaintiff and Settlement Class Members are all eligible for the same reimbursement of settlement payment, lost time, and credit monitoring services, as well as data-security enhancements. Though Plaintiff will be seeking a $5,000 award for her service on behalf of the Settlement Class, and this award is justified by the benefits brought to the Settlement Class by the work of Plaintiff.

Finally, Settlement Class Counsel have decades of combined experience litigating class actions, in particular in the data breach context. Settlement Class Counsel are particularly well-suited to advocate and litigate on behalf of the Settlement Class. See Joint Decl.  at Exs. A-C. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### 2.   The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### a.   Predominance

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Key predominating questions in this case are whether Hometrust had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class Members, and whether Hometrust breached that duty. The common questions that arise from Hometrust's conduct predominate over any individualized issues. Other courts have recognized

that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2017 U.S. Dist. LEXIS 221736, at *34 (N.D. Ga. Sep. 22, 2017) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach)."

### b.  Superiority

The resolution of millions of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the same Data Incident. Because the common questions of fact and law that arise from Hometrust's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

### D.  The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil Procedure 23. *See* S.A. Ex. A-B. The proposed Settlement provides for direct and individual Notice to be sent via U.S. class mail to each Settlement Class Member by the Claims Administrator. S.A. ¶ 7.2.1. If a Notice is returned to the Claims Administrator and there is no forwarding address, the Claims administrator will perform a standard skip trace to ascertain the updated address of the Settlement Class Member and resend Notice. *Id*. ¶ 8.6. In the event there is no U.S. mailing address available, the Class Administrator will notify Settlement Class Members by the last known personal email address. *Id*.

In addition to disseminating Notice via direct mail, the Claims Administrator will establish the Settlement Website where all relevant filings will be available including hyperlinked access to this Agreement; the Notice; the order preliminarily approving the Settlement; the Final Approval Order; Claim Forms; Reimbursement Forms; and such other documents as Class Counsel and Hometrust agree to post or that the Court orders posted. *Id*. ¶¶ 7.1, 7.2.5. The Claims Administrator

will also make a toll-free telephone number available for any Settlement Class Member to seek answers to questions regarding the Settlement. *Id.* ¶¶7.1,7.2.4,8.8.

The Notices themselves are clear and straightforward. S.A. Ex. A-B. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id.* The Notices disclose the essential terms of the Settlement Agreement, including the Service Award request for the Class Representative and the amount Settlement Class Counsel intends to seek in fees, costs, and expenses. *Id.* The Notices explain the procedures for making claims, objecting, and requesting exclusion and provides Settlement Class Members with information that enables them to calculate their individual loss in time recovery. *Id.* Finally, the Notices alert the Settlement Class Members to the date, time, and place of the Final Fairness Hearing and to the contact information for Settlement Class Counsel. *Id.*

The proposed direct mail Notice is the gold standard and is consistent with other Notice programs approved in the Fifth Circuit. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to class members by first class mail); *Billitteri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at \*9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23 requirements and should be approved by the Court. *See* U.S. Const., amend. XIV; Tex. Const., art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(b) & (e)(1).

### E. The Court Should Appoint the Claims Administrator

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Kroll to serve as the Claims Administrator. Kroll has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Joint Decl., ¶ 10.

### F.  The Court Should Appoint the Class Representative

Plaintiff Yuan should be provisionally appointed Class Representative. As set forth above, she has represented the Settlement Class with no conflict of interest or antagonism between herself and other members of the class. Her PII, like the PII of the Settlement Class Members, has been impacted in the same Data Incident, and, as a result, Plaintiff has the same interests as the Settlement Class Members. *See* Joint Decl., ¶ 4. Moreover, Plaintiff has capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*. Finally, Plaintiff is informed of the risks of continued litigation and the benefits of early resolution. *Id*.

### G.  The Court Should Appoint Settlement Class Counsel

Plaintiff requests appointment of Meyer Wilson Co., LPA, Kendall Law Group, PLLC, and Turke & Strauss LLP as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Joint Decl. §A-C.

## IV.  CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiff respectfully requests that this Honorable Court enter an Order:

1)  Preliminarily approving the Settlement;

2)  Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

3)  Appointing Kroll as Settlement Administrator;

4)  Approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C) attached to the Settlement Agreement;

5)  Appointing Connie Yuan as Representative of the Class;

6)  Appointing Meyer Wilson Co., LPA, Kendall Law Group, PLLC, and Turke & Strauss LLP as Settlement Class Counsel;

7)  Scheduling a Final Fairness Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiff's service awards to be held approximately 120 days after entry of the Preliminary Approval Order; and

8)  Such other relief as the Court deems just and proper.

Dated: May 26, 2023                                Respectfully submitted,

/s/ Joe Kendall                                    /s/ Raina C. Borrelli
JOE KENDALL                                        Raina C. Borrelli (admitted pro hac vice)
Texas Bar No. 11260700                             **TURKE & STRAUSS LLP**
**KENDALL LAW GROUP, PLLC**                        613 Williamson Street, Suite 201
3811 Turtle Creek Blvd., Suite 1450                Madison, WI 53703
Dallas, Texas 75219                                Telephone: (608) 237-1775
214-744-3000 / 214-744-3015 (Facsimile)            Facsimile: (608) 509-4423
jkendall@kendalllawgroup.com                       raina@turkestrauss.com

Matthew R. Wilson                                  Layne C. Hilton
**MEYER WILSON CO., LPA**                          **MEYER WILSON CO., LPA**
305 W. Nationwide Blvd                             900 Camp Street, Suite 337
Columbus, OH 43215                                 New Orleans, LA 70130
Tel. (614) 224-6000 / Fax. (614) 224-6066          Tel. (614) 224-6000
mwilson@meyerwilson.com                            Fax. (614) 224-6066
                                                   lhilton@meyerwil.com

***Attorneys for Plaintiff and the Proposed Class***

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on May 4th through May 24, 2023, I conferred with Jessica Little, counsel for defendant, regarding the substance of this motion and she stated that defendant does not oppose the relief requested herein.

*/s/ Raina C. Borrelli*
RAINA C. BORRELLI

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d), the undersigned certifies that on May 26, 2023, the foregoing instrument was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Joe Kendall*
JOE KENDALL
