# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISON

| | |
|---|---|
| CONNIE YUAN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>HOMETRUST MORTGAGE CO.,<br><br>　　　　　　　Defendant. | Case No. 1:22-cv-01355-DAE<br><br>Judge David A. Ezra |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiff Connie Yuan, by and through the undersigned Settlement Class Counsel[1], submits this Unopposed Motion for Final Approval of Class Settlement and Memorandum in Support, requesting final approval of this proposed class action settlement ("Settlement") pursuant to Fed. R. Civ. P. 23(e) on the terms set forth in the Settlement Agreement dated May 23, 2023 (Doc. 27-1, or "S.A.") and for certification of the Settlement Class.[2]

## I.   INTRODUCTION

If approved, the Settlement will successfully resolve the claims of approximately 17,300 individuals nationwide whose personal identifying information ("PII") was allegedly accessed, as the result of a cyberattack, by an unauthorized third party to certain computer systems of Hometrust in or around July of 2022. The Settlement negotiated on behalf of Plaintiff and the Class provided significant benefits to the Settlement Class through a $700,000 non-reversionary common fund from which Settlement Class Members were eligible to recover: (1) compensation for any out-of-pocket losses that are fairly attributable to the Incident, including (a) any actual losses suffered as well as compensation for any lost time spent responding to the Incident, or (b) a cash settlement payment of $50; and (2) five years of credit monitoring protection. The settlement fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and a Class Representative service award. In addition to the benefits provided via the settlement fund, as part of the settlement, Hometrust committed to providing additional anti-phishing training to its employees at its own expense and separate from the other settlement benefits. This Settlement represents an excellent result for the Settlement Class and provides them with meaningful benefits to remedy the harm they have allegedly suffered, or will suffer, due to the Incident.

---

[1] The Court appointed Plaintiff Connie Yuan as the Settlement Class Representative and appointed Meyer Wilson Co., LPA, Kendall Law Group, PLLC, and Turke & Strauss LLP as Settlement Class Counsel. Doc. 29.
[2] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement.

On June 29, 2023, this Court granted preliminary approval to the Settlement, finding that it is "fair, reasonable, and adequate, and within the range of possible approval." Doc. 29, ¶3. The Court-ordered notice plan has since been successfully executed and the response to the Settlement has been overwhelmingly favorable, with only one person opting out of the Settlement and no objections. Kroll Decl., ¶¶21-22. This response weighs in favor of final approval. For the reasons detailed below, Plaintiff and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs respectfully request the Court to finally approve the Settlement and enter a final judgment dismissing this case.[3]

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporate Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 27) filed on May 26, 2023, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith (Docs. 27-1 through 27-6). Plaintiff also incorporates by reference the Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards (Doc. 30), filed on August 28, 2023.

## III.   SUMMARY OF SETTLEMENT

### 1. The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "All persons whose personal information was exposed or potentially exposed to unauthorized access or acquisition as a result of an Incident affecting Hometrust's computer network that occurred in or around July of 2022." S.A. ¶ 4.1. The Settlement Class excludes those who timely opt-out of the

---

[3] The Court previously granted Settlement Class Counsel's motion for attorneys' fees, costs, and service awards. Doc. 31.

Settlement. S.A. ¶ 8.3  The Court previously preliminarily approved certification of this Settlement Class. Doc. 29 at ¶ 4.

### 2. Settlement Benefits

The Settlement establishes a $700,000 non-reversionary common fund from which Hometrust will provide Settlement Class Members with timely benefits targeted at remediating the specific harms they claim to have suffered as a result of the Incident. The benefits of the Settlement are available to all Settlement Class Members. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

*First*, Settlement Class members may make claims, with no dollar cap, to recover for economic losses, defined as any out-of-pocket cost fairly traceable to the Data Security Incident. S.A. ¶1.9. This includes losses suffered as a result of identity theft. *Id.* ¶ 4.5.2. The Settlement also allows Settlement Class Members who have spent at least one full hour dealing with the Data Security Incident to claim up to ten hours of lost time at $40 per hour (for a total of up to $400) by submitting a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. S.A. ¶ 4.5.8. In the alternative to claims for economic losses or attested time, Settlement Class Members are eligible to receive a cash settlement payment of $50 through submission of a valid and timely claim and supporting documentation indicating they are members of the class. S.A. ¶ 4.5.10. To the extent funds remain in the Settlement Fund after the calculation of all valid claims as well as other expenses to be paid from the Settlement Fund (including costs of notice and settlement administration, attorney's fees and costs, and service award), all valid claims will be increased pro rata until the Settlement Fund is depleted. S.A. ¶ 4.5.11

*Second*, all Settlement Class Members will have the option to sign-up for credit monitoring

provided by Equifax, at no cost if they elect to enroll. S.A. at ¶4.5.1. These services will come with fully managed identity theft protection, and identity restoration services. *Id*.

And ***third***, separate from, and in addition to, the other Settlement Benefits described above, Hometrust will provide additional anti-phishing training to its employees. S.A. ¶ 4.5.19. The cost of the anti-phishing training will be paid by Hometrust separate and apart from the Settlement Fund. This will ensure Settlement Class Members' information is protected moving forward.

3. **Notice, Fees, Costs, and Service Awards**

The Settlement also provides that all costs of notice and settlement administration as well as attorneys' fees, costs, and service award (as approved by the Court) will be paid from the Settlement Fund. S.A. ¶¶ 6.3. 10.1, 10.2. The Court approved the proposed notice program when it granted preliminary approval, and the Settlement Administrator, Kroll Settlement Administration, LLC, with the assistance of the parties, effectuated the notice program consistent with the Settlement Agreement and the Preliminary Approval Order. Kroll Decl., ¶¶4-13. Kroll mailed notice directly to 17,290 Settlement Class Members and issued email notice to an additional 11 Settlement Class Members for whom an address could not be identified. *Id.* ¶¶9-10. After re-sending undeliverable notices following an advanced address search, Kroll believes that notice reached 17,099 of the 17,301 to whom direct notice was sent, which is a reach of approximately 99%. *Id.* ¶13. This is an excellent result. *Id*. Notice was also available via a dedicated settlement website. *Id.* ¶8. Additionally, Kroll effectuated notice under CAFA to the Attorney General of the United States and thirty-seven (37) state Attorneys General. *Id.* ¶4.

The Notice instructed Settlement Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an

individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. *See* S.A., Exs. A, B. The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on September 11, 2023, and only one exclusion request and no objections have been received to date. Kroll Decl., ¶¶21-22. The claim deadline was also September 11, 2023, and approximately 336 claims were received for all categories of Settlement benefits, including the cash payment, attested time, and for credit monitoring. *Id.* ¶16.

Finally, Plaintiff previously moved for an award of attorney's fees of one-third of the Settlement Fund, or $231,000, plus reasonable expenses of $6,054.99, and a service award of $5,000 to the Class Representative, Ms. Yuan. Docs. 30, 31, which the Court granted.

## IV.     LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[4] These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978);

---

[4] Here, there are no agreements between the Parties except those set forth in, or explicitly referenced in, the Settlement. Thus Rule 23(e)(2)(C)(iv) is irrelevant here.

7

*see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

V.   **ARGUMENT**

    **A. The Settlement is Fair, Reasonable, and Adequate**

Under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiff's motion seeking final approval of this Settlement, which offers significant and immediate relief to the 17,300 individuals affected by Hometrust's Data Security Incident. As the Court held when it granted preliminary approval, the Settlement is "fair, reasonable, and adequate," and "has been negotiated in good faith at arm's-length between experienced attorneys familiar with the legal and factual issues of this case." Doc. 29 at ¶ 3. Nothing has changed since preliminary approval that should alter this assessment. In fact, the response of the Settlement Class to the Settlement (only one request for exclusion and no objection out of a class of over 17,000 people who were sent notice by first-class mail) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. *See Burford v. Cargill, Inc*., No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *17 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the settlement.") For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should finally approve the Settlement.

### 1. Plaintiff and Settlement Class Counsel Provided Excellent Representation.

Plaintiff and Class Counsel certainly satisfy the adequacy of representation factor under Rule 23(e)(2)(A). Plaintiff has no conflicts of interest with other Settlement Class Members, is not subject to any unique defenses, and she and her counsel vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. *See generally* Doc. 30-1 (Borrelli Fee Decl.). Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See* Doc. 27-2 (Joint Preliminary Approval Decl.), at pg. 4-10; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

Class Counsel also conducted a thorough investigation of the facts both before and during the course of this action, including prior to engaging in mediation and negotiating the Settlement. This investigation allowed Class Counsel to have a "full understanding of the legal and factual issues surrounding this case" prior to reaching the Settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Having completed their investigation and given the risks of no recovery at all, Settlement Class Counsel, together with Plaintiff, settled this matter in a way that not only provides timely and important benefits to the Settlement Class, but also avoids the expense and risk of ongoing litigation.

### 2. The Settlement is the product of serious, informed, arm's-length negotiations.

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as

good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Parties engaged a well-respected and experienced mediator, John DeGroote, to assist them in resolving this case via an in-person mediation. Joint Preliminary Approval Decl., ¶7. In the weeks leading up to the mediation, the parties exchanged key information needed to inform their strategies. *Id.* ¶¶6-7. The Parties began their negotiations ahead of the mediation session, allowing them to identify key areas of dispute that required additional assistance to negotiate at the mediation. *Id.* ¶6. Throughout all negotiations, Settlement Class Counsel and counsel for Hometrust fought hard for the interests of their respective clients. *Id.* ¶9.

This exchange of information prior to settlement discussions and the involvement of a third-party mediator all weigh in favor of final approval as they demonstrate that negotiations were all at arms-length and supported by all relevant factual information needed. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage); *see also Quintanilla v. A & R Demolition Inc.*, 2007 WL 5166849, at *4 (S.D. Tex. May 7, 2007) (holding a class action settlement to be free of fraud or collusion when "[t]he settlement was reached through arms-length negotiations after a long, hard-fought mediation with a neutral").

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the

parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Here, Hometrust entirely denied liability for the Data Security Incident and planned to file a motion to dismiss had the parties not explored early resolution.

This case is settling in its early stages; if the Settlement is not finally approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. That process could take years to resolve, involve expensive expert discovery, and would not guarantee any greater benefits for the Settlement Class than what has been achieved through the Settlement. Moreover, the parties will bear the cost of this litigation if it continues. While Plaintiff believes she has strong claims and would be able to prevail, an early resolution, before both sides spend time and money on litigation is in the best interest of the Settlement Class. *Ayers*, 358 F.3d at 369 ("Settling now avoids the risks and burdens of potentially protracted litigation.").

**4. The State of Litigation and the Available Discovery.**

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id*. (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D.

433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 (W.D. Tex. Feb. 21, 2007).

Here, during the settlement negotiations and prior to mediation, Hometrust produced significant information about the scope of the Data Security Incident, the number of potential class members, and the Defendant's remedial efforts. Drawing on their significant and substantial experience in other data breach class action litigation, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. Joint Preliminary Approval Decl., ¶¶11-16. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

### 5. The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks.

When evaluating a proposed class action settlement, "the most important factor is the [fourth Reed factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is not absolute. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages);

*Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise weigh in favor of final approval.

As outlined above, this Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Incident. The Settlement is similar to results obtained in other data breach cases, further supporting that this settlement is fair and adequate such that it should be approved. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Should litigation continue, Plaintiff would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to the rapidly evolving law and minimal Fifth Circuit guidance on data breach jurisprudence, this case faces uncertainties. Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex area of the law given the need to show the technicalities of how the breach occurred, how it should be prevented, and precisely what information was impacted. Moreover, the damages methodologies, while theoretically sound in Plaintiff's view, remain unproven in front of a jury. Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Another significant risk faced by Plaintiff here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[ed] losing class action status." *Grimm v. American Eagle Airlines, Inc.*,

No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiff disputes any defenses Hometrust asserts and is confident that class certification, and ultimately a class judgment, is achievable, success is not guaranteed. But through the Settlement, Plaintiff and the Settlement Class gain significant benefits without having to face the risk of recovering no relief at all.

### 6. Class Counsel and Plaintiff Believe the Settlement is in the Settlement Class's Best Interest.

Plaintiff and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, which is an important consideration in any class settlement analysis. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). Here, Settlement Class Counsel are highly experienced in class action litigation generally, and data breach litigation in particular, and are well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. The assessment of Class Counsel weighs in favor of final approval. *See Stott v. Capital Fin. Servs.*, Inc., 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330),

### 7. The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Final Approval.

Subject to Court approval, eligible claims will be paid either electronically or by written check. Settlement checks and credit monitoring codes will be delivered by the Settlement

Administrator to Settlement Class Members after the Effective Date. This is a simple, clean, and effective distribution process.

### 8. The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. It also informed Class Members of their right to object to, or opt out of, the Settlement. All Class Members were eligible to make a claim for the same categories of monetary relief and/or to elect the credit monitoring service. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### 9. Reaction of Settlement Class Members.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a class of approximately 17,300 individuals, only one person requested exclusion and there were no objections. *See* Kroll Decl., ¶¶21-22. 248 valid and timely claims from Settlement Class Members were submitted. *Id*. ¶16. Of those, the majority requested credit monitoring and a cash payment, while others requested reimbursement for Economic Losses and Lost time. *Id.* Settlement Class Members that made claims will obtain significant relief, with an average cash reimbursement of $79.39 (before any *pro rata* distribution of remainder funds, which cannot be calculated until after final approval). *Id.* ¶19. Beyond this cash reimbursement value, the retail value of the credit monitoring Settlement Class Members are receiving is $597 total (for 60 months of monitoring). *Id.* These benefits, which directly address the harm claimed in this case, may not have been available at all to Settlement Class Members without this Settlement.

### B. The Court Should Finally Certify the Settlement Class

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement Class. The Settlement Class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision should be made final, for the reasons set forth in the Plaintiff's Preliminary Approval Motion and Supporting Memorandum. *See* Doc. 27.

### C. The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Kroll mailed notice directly to 17,290 Settlement Class Members and issued email notice to an additional 11 Settlement Class Members for whom an address could not be identified. Kroll Decl., ¶¶5, 9. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id.*, Ex. C. After re-sending undeliverable notices following an advanced address search, Kroll believes that notice reached 17,099 of the 17,301 to

whom direct notice was sent, which is a reach of approximately 99%. *Id.* ¶13. This is an excellent result. *Id*. Notice was also available via a dedicated settlement website. *Id.* ¶8. Additionally, Kroll effectuated notice under CAFA to the Attorney General of the United States and thirty-seven (37) state Attorneys General. *Id.* ¶4. Kroll (through its representative Mr. Fenwick, an experienced professional in the field of providing class action notice) offers the opinion that the delivery success percentage of 99% meets and exceeds the 70% threshold necessary to satisfy due process requirements. *Id*.

In addition to the direct mail notice, Kroll established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. *Id*. Also, Kroll established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system. *Id.* ¶¶6-8.

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and incorporating its prior Order granting the request for attorneys' fees, expenses, and service awards.

Dated: November 3, 2023

Respectfully submitted,

| | |
|---|---|
| /**s**/ *Joe Kendall* <br> JOE KENDALL <br> Texas Bar No. 11260700 <br> **KENDALL LAW GROUP, PLLC** <br> 3811 Turtle Creek Blvd., Suite 1450 <br> Dallas, Texas 75219 <br> 214-744-3000 / 214-744-3015 (Facsimile) <br> jkendall@kendalllawgroup.com | */s/ Raina C. Borrelli* <br> Raina C. Borrelli (admitted p*ro hac vice*) <br> **TURKE & STRAUSS LLP** <br> 613 Williamson Street, Suite 201 <br> Madison, WI 53703 <br> Telephone: (608) 237-1775 <br> Facsimile: (608) 509-4423 <br> raina@turkestrauss.com |
| Matthew R. Wilson <br> **MEYER WILSON CO., LPA** <br> 305 W. Nationwide Blvd <br> Columbus, OH 43215 <br> Tel. (614) 224-6000 / Fax. (614) 224-6066 <br> mwilson@meyerwilson.com | Layne C. Hilton <br> **MEYER WILSON CO., LPA** <br> 900 Camp Street, Suite 337 <br> New Orleans, LA 70130 <br> Tel. (614) 224-6000 <br> Fax. (614) 224-6066 <br> lhilton@meyerwil.com |

***Attorneys for Plaintiff and the Proposed Class***

**CERTIFICATE OF CONFERENCE**

I certify that on November 3rd, 2023, I conferred with Jessica Little, counsel for Defendant, regarding the substance of this motion and she stated that defendant does not oppose the relief requested herein.

/s/ Raina C. Borrelli
RAINA C. BORRELLI

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d), the undersigned certifies that on November 3, 2023, the foregoing instrument was served upon all counsel of record via the Court's CM/ECF system.

/s/ Joe Kendall
JOE KENDALL